IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CR-00079-F-3
No. 5:16-CV-00830-F

| | |
|---|---|
| ADAM JOSEPH BARFIELD,<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | **ORDER** |

Before the court are the following:

(1) the Government's Motion to Dismiss [DE-467], which has been construed as a motion for summary judgment; and

(2) Adam Joseph Barfield's ("Barfield") pending Motions to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE-452, -476].[1]

The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons set forth below, the Government's Motion for Summary Judgment is ALLOWED and Barfield's Motions to Vacate are DENIED.

## I. Factual and Procedural Background

On April 23, 2014, Barfield was named in four counts of a twenty-two count indictment in the Eastern District of North Carolina. *See* Indictment [DE-1]. In Count One, Barfield was charged with conspiracy to manufacture, distribute, dispense, and possess with the intent to distribute fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846. *See id.* Barfield was charged in Count

---

[1] On October 4, 2016, Barfield filed a § 2255 motion [DE-452], raising four claims of ineffective assistance of counsel. Then, on November 18, 2016, Barfield filed an amended § 2255 motion [DE-476], which addresses the same four claims but in much greater detail.

Eleven with possession of equipment, chemicals, products, and material with the intent to manufacture methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 843(a)(6) and 18 U.S.C. § 2. *See id.* In Count Twelve, Barfield was charged with possession of pseudoephedrine with the intent to manufacture methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 841(c)(1) and 18 U.S.C. § 2. *See id.* Barfield was charged in Count Thirteen with possession with the intent to distribute a quantity of a mixture or substance containing a detectable amount of methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. *See id.*

At his arraignment, held on November 4, 2014, Barfield pleaded guilty to Count One pursuant to a plea agreement [DE-206]. It was agreed that at sentencing as to Barfield only, the Government would dismiss Counts Eleven, Twelve, and Thirteen of the Indictment. *Id.* at 6. On September 1, 2015, this court conducted a hearing and heard testimony on an objection to the calculation of the Guidelines. *See* Sept. 1, 2015 Tr. [DE-355]. Then, on September 29, 2015, this court held Barfield's sentencing and sentenced him to 360 months' imprisonment and a lifetime term of supervised release. *See* Judgment [DE-370]. Barfield did not file a direct appeal.

On October 4, 2016, Barfield filed the instant *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE-452]. In his § 2255 motion, Barfield raises the following claims of ineffective assistance of counsel: (1) his attorney failed to have him mentally evaluated and failed to file a motion for downward departure; (2) his attorney focused on getting him to plead guilty and ignored drug weight issues; (3) his attorney failed to object to the leadership role enhancement; and (4) his attorney failed to object to this court's determination

2

that the conspiracy started in December 2011.

On November 10, 2016, the Government filed a Motion to Dismiss [DE-467] pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Barfield failed to state a claim upon which relief can be granted. On November 18, 2016, Barfield filed an amended motion pursuant to 28 U.S.C. § 2255 [DE-476], in which Barfield expounds on the claims addressed in his original § 2255 motion. In an order entered on December 15, 2016 [DE-481], this court advised the parties that it intended to construe the Government's Motion to Dismiss as one seeking summary judgment.[2] *Id.* at 1. On January 10, 2017, Barfield filed an Opposition [DE-488] to the Government's Motion to Dismiss.

## II. Legal Standards

### A. 28 U.S.C. § 2255

Barfield filed the instant motion pursuant to 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). With a § 2255 motion, the petitioner bears the burden of proving the grounds for collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). When deciding a § 2255 motion, the court need not hold a hearing when "the motion and the files and records of the case conclusively show that the prisoner is

---

[2] The Government's Motion to Dismiss references and relies upon a sealed Declaration [DE-470].

3

entitled to no relief." 28 U.S.C. § 2255(b). When conducting the § 2255(b) review, *pro se* filings are held to a less stringent standard. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

## B. Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and it appears that the moving party is entitled to judgment as a matter of law. *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991) (applying the summary judgment standard to a motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Summary judgment is appropriate when the record taken as a whole could not lead a trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## III. Discussion

### A. The Government is entitled to summary judgment on Barfield's ineffective assistance of counsel claims.

Barfield has raised four claims of ineffective assistance of counsel. *See* Pet'r's Mots. [DE-452, -476]. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The petitioner bears the burden of proof as to both prongs of the *Strickland* standard. *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010). Under the first prong, the petitioner must show that his counsel's representation "fell below an objective standard of reasonableness" as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. There is "a strong presumption that counsel's

4

conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As to the second prong, the petitioner must demonstrate that counsel's inadequate performance was prejudicial to him. *Id.* at 687. Specifically, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* With the *Strickland* standard in mind, the court will address each of Barfield's ineffective assistance of counsel claims in turn.

**1. Barfield alleges that his attorney provided ineffective assistance of counsel by failing to have him mentally evaluated and failing to file a motion for downward departure.**

In his first claim, Barfield alleges that his attorney provided ineffective assistance by failing to have him mentally evaluated. Pet'r's Mot. [DE-452] at 4; Pet'r's Am. Mot. [DE-476] at 4. According to Barfield, he had a serious drug habit at the time of his arrest and was not rational. Pet'r's Mot. [DE-452] at 4; Pet'r's Am. Mot. [DE-476] at 4; Pet'r's Mem. [DE-476-1] at 3. Barfield further claims that he was traumatized as a child and has a well-documented history of mental illness, and that both of these situations should have served as the basis for a downward departure. Pet'r's Mot. [DE-452] at 4; Pet'r's Am. Mot. [DE-476] at 4; Pet'r's Mem. [DE-476-1] at 3.

The Government has filed a sealed Declaration [DE-470], authored by Barfield's trial counsel, Daniel M. Blau ("Blau"), in support of its motion seeking summary judgment. In the Declaration, Blau represents that he was aware that Barfield had a serious drug habit and committed the offenses charged in order to support his habit. *Id.* ¶ 7. However, the discovery in this case contained no evidence suggesting Barfield was legally insane or incompetent at the time

5

he committed the offenses. *Id.* Barfield never raised the possibility with Blau or asked that he be mentally evaluated. *Id.* Barfield was able to recall prior events with significant detail, and Blau had no reason to doubt his mental capacity at the time of the offenses. *Id.* Moreover, Blau had no reason to question Barfield's competence at the time of any of the court proceedings. *Id.* ¶ 8. Barfield was arrested on related state charges on November 9, 2012, and he had been in continuous custody for twenty months prior to his federal arrest. *Id.* Barfield was always alert, engaging, and well-oriented during conversations with Blau and at all court appearances. *Id.* Barfield was able to understand and assist in his defense at all times. *Id.* Barfield never advised Blau that he was not competent and never asked Blau to have him evaluated. *Id.*

With respect to Barfield's claim that Blau erred by failing to move for a downward departure due to his difficult childhood and upbringing, Blau states that he *did* move for such a departure. *Id.* ¶ 9. In the draft Presentence Report ("PSR"), U.S. Probation Officer Michael Panker ("Officer Panker") recommended a downward departure or variance, pursuant to U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(a), based on Barfield's troubled upbringing. *Id.* ¶ 10.

Blau met with Barfield on March 13, 2015 to discuss the draft PSR. *Id.* ¶ 11. During that meeting, they discussed Officer Panker's recommendation, and Blau spoke with Barfield in more detail about events that transpired during his childhood. *Id.* Blau asked for and received permission from Barfield to contact his family members to obtain more information. *Id.*

After speaking with Barfield's mother and sister on August 4, 2015, Blau filed a motion for a downward departure and/or variance sentence and a sentencing memorandum. *Id.* ¶¶ 12-13. Blau requested a downward departure or variance sentence, pursuant to U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(a), based on Barfield's troubled upbringing, as recommended in the PSR.

6

*Id.* ¶ 13.

Blau represents that at Barfield's sentencing hearing, held on September 29, 2015, he referenced his sentencing memorandum during his remarks to this court and also asked this court to impose a downward departure or variance. *Id.* ¶ 14. Blau's recollection is that Assistant United States Attorney Jennifer Wells ("AUSA Wells") argued that although Barfield experienced hardship during his upbringing, it was not so extreme as to warrant a lower sentence. *Id.* This court ultimately did not allow his motion for a downward departure or variance based on his troubled upbringing. *Id.*

The representations in Blau's Declaration find support in the record. For instance, the record reveals that on August 25, 2015, Blau filed a Motion for Downward Departure and/or Variance [DE-339]. In this motion, Blau moved for a downward departure pursuant to U.S.S.G. §§ 5K2.0 and 5K2.23 and/or a variance sentence pursuant to 18 U.S.C. § 3553(a). *Id.*

Barfield's bare allegations that Blau provided deficient performance stand in stark contrast to the Government's position, which is supported by Blau's Declaration and the record as a whole. In sum, Barfield has failed to raise a genuine issue of material fact regarding whether his attorney provided deficient performance by failing to have him mentally evaluated and failing to move for a downward departure. Because Barfield has made an insufficient showing on the performance prong of the *Strickland* standard, this court need not address the prejudice prong. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the [petitioner] makes an insufficient showing on one."). Accordingly, the Government is entitled to summary judgment on Barfield's first claim.

### 2. Barfield alleges that his attorney provided ineffective assistance of counsel when he focused on getting Barfield to plead guilty and ignored drug weight issues.

Barfield alleges in his second claim that his attorney provided ineffective assistance when he focused on getting Barfield to plead guilty and ignored serious drug weight issues. Pet'r's Mot. [DE-452] at 5; Pet'r's Am. Mot. [DE-476] at 5.

Blau concedes that he advised Barfield to plead guilty. Blau Decl. [DE-470] ¶ 15. Blau states, however, that he did not unduly coerce Barfield to plead guilty against Barfield's wishes. *Id.* Blau explains that when Barfield was arrested on July 8, 2014, time was of the essence because all nine of his codefendants had already been arrested. *Id.* ¶ 16. Blau's experience in cases with so many codefendants was that the first party or parties to sign a plea agreement and agree to cooperate with the Government might have a better chance of securing a favorable result. *Id.* Because Barfield was literally last in line, it was of critical importance that Blau assess the evidence as quickly as possible and advise Barfield of the best course of action. *Id.*

Very early in Barfield's case, Blau spoke with AUSA Wells in order to gauge the possibility of Barfield cooperating with the Government. *Id.* ¶ 17. AUSA Wells indicated that the Government was interested in working with Barfield, and she made a plea offer very quickly. *Id.* Blau stated that he reviewed the discovery, which consisted of more than 2,500 pages, and he did not identify any apparent defenses or grounds for suppression of evidence or dismissal of the case. *Id.* Blau determined that Barfield would achieve the best result by signing the plea agreement and beginning to cooperate with the Government as soon as possible. *Id.*

Blau met with Barfield for several hours to discuss the discovery and the Government's plea offer. *Id.* ¶ 18. Blau felt that signing the plea agreement was in Barfield's best interest and

8

strongly advised him to do so. *Id.* Barfield was aware that the decision regarding whether or not to sign was his, and Blau would represent him no matter what choice he made. *Id.* While Barfield had serious reservations about signing the plea, he ultimately signed it on July 18, 2014, just nine days after his arrest. *Id.*

With respect to Barfield's claim that Blau ignored objections he raised regarding the drug weight attributed to him in the PSR, Blau states that this claim is false because he did a significant amount of work to address Barfield's concerns. *Id.* ¶ 19. Blau received the draft PSR from Officer Panker on January 16, 2015. *Id.* ¶ 20. The draft PSR attributed 563.84 grams of pseudoephedrine and 699.26 grams of methamphetamine to Barfield, resulting in a total marijuana equivalency of 7,036.92 kilograms of marijuana. *Id.* This resulted in a base offense level of 32 under U.S.S.G. § 2D1.1. *Id.*

Blau spent more than three hours identifying and researching issues related to Barfield's draft PSR, including his drug weight. *Id.* ¶ 21. On March 13, 2015, Blau met with Barfield to discuss the draft PSR, including the problems with his drug weight. *Id.* ¶ 22. During this conversation, Blau realized that some of the pseudoephedrine sales attributed to Barfield in the draft PSR contradicted information contained in the discovery materials. *Id.*

On March 26, 2015, Blau called Officer Panker to discuss issues related to the draft PSR. *Id.* ¶ 23. Blau identified four areas where he felt Barfield's drug weight was erroneously calculated, and Officer Panker agreed to talk with his supervisor about those issues. *Id.* On June 12, 2015, Officer Panker emailed Blau to inform him that his supervisor had agreed to remove a significant amount of drug weight from the PSR. *Id.* The new marijuana equivalency was 4,690.2 kilograms of marijuana, but unfortunately, Barfield's base offense level remained the

same. *Id.*

Approximately two months later, Barfield contacted Blau and stated that he had discovered another problem with his drug weight. *Id.* ¶ 24. In particular, the draft PSR held Barfield accountable for providing pseudoephedrine to two codefendants when those codefendants were in custody. *Id.* Blau investigated the matter and concluded that Barfield was correct. *Id.* Blau emailed Officer Panker on August 13, 2015 to advise him of the discrepancy. *Id.* Once again, Officer Panker agreed to remove that amount of drug weight from the PSR. *Id.* The new marijuana equivalency was 3,728.2 kilograms of marijuana, which was nearly half of the original drug weight, but again, Barfield's base offense level was unaffected. *Id.*

Barfield also took issue with a statement made by codefendant Jodi Jenkins that accounted for most of the remaining drug weight. *Id.* ¶ 25. Blau spent a significant amount of time researching the matter and concluded that if Barfield filed a formal objection to his drug weight, he would likely lose the objection. *Id.* If the objection were successful, it would only result in a two-level decrease to Barfield's offense level. *Id.* If Barfield lost the objection, it might cause him to lose his downward adjustment for acceptance of responsibility, as well as his U.S.S.G. § 5K1.1 motion for cooperation. *Id.* Blau advised Barfield that he deemed the risk too great and the potential reward too small to make it worthwhile to challenge his drug weight. *Id.* Barfield had grave reservations but eventually agreed to forego a drug weight objection to the PSR. *Id.* While Barfield decided not to challenge his drug weight, he decided to object to other enhancements in his PSR. *Id.* ¶ 26.

Barfield's case was originally set for sentencing on September 1, 2015. *Id.* On that date, the case was continued to September 29, 2015. *Id.* Following the September 1 hearing, Barfield

10

informed Blau that he had changed his mind and now wanted to object to his drug weight. *Id.* Blau knew the objection was untimely, and he also felt that pursuing it was a poor choice. *Id.* Even so, Blau spent many hours reviewing the discovery and creating a drug-weight objection for Barfield. *Id.*

Blau planned to file Barfield's new objection on September 22, 2015, but before he could do so, AUSA Wells called. *Id.* ¶ 27. AUSA Wells stated that if Barfield dropped all his remaining objections, she would forego one of her own objections to the PSR and reinstate the § 5K1.1 motion based on Barfield's cooperation. *Id.* AUSA Wells also stated that she anticipated needing Barfield's additional assistance and testimony at a trial following his sentencing. *Id.* Blau knew this would increase the chances of Barfield receiving a Rule 35 sentence reduction. *Id.* AUSA Wells stated she would only consider that possibility if Barfield withdrew his remaining objections. *Id.* Blau met with Barfield on September 23, 2015 so they could discuss AUSA Wells' offer. *Id.*

Blau strongly advised Barfield to forego the drug-weight objection because that was in his best interest. *Id.* ¶ 28. Blau left the decision up to Barfield and informed Barfield he would represent him to the best of Blau's ability no matter what choice he made. *Id.* Ultimately, Barfield decided to forego the drug-weight objection, a decision of his own free will that was made with a full understanding of the choice he was making. *Id.*

Barfield has failed to show a genuine issue of material fact under both prongs of the *Strickland* standard. Under the first prong, Barfield has presented his bare allegations in support of his claim that his attorney provided deficient performance. In opposition, the Government has presented the sworn Declaration of Barfield's attorney, Blau, which finds support in the record.

11

This claim also fails under the second prong of *Strickland*. In particular, Barfield has not alleged or shown that he would have pleaded not guilty and gone to trial if his attorney had not recommended that he plead guilty. Consequently, the Government is entitled to summary judgment on Barfield's second claim.

### 3. Barfield alleges that his attorney provided ineffective assistance of counsel by failing to object to the leadership role enhancement.

In his third claim, Barfield alleges that his attorney provided ineffective assistance by failing to object to the leadership role enhancement pursuant to U.S.S.G. § 3B1.1(b). Pet'r's Mot. [DE-452] at 7; Pet'r's Am. Mot. [DE-476] at 6; Pet'r's Mem. [DE-476-1] at 4. According to Barfield, he was not a leader and was merely supporting his drug habit. Pet'r's Mot. [DE-452] at 7; Pet'r's Mem. [DE-476-1] at 4.

At sentencing, pursuant to U.S.S.G. § 3B1.1(b), a three-level enhancement was applied to Barfield because he was found to be a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive. PSR [DE-337] at 29 ¶ 88. The evidence of record reveals the following: Barfield was involved in a conspiracy to produce methamphetamine from October 2011 through November 2012. *Id.* at 19 ¶ 36. Barfield was referred to as the "pill man" because he had several individuals collecting pseudoephedrine pills which were then provided to multiple methamphetamine cooks. *Id.* at 17 ¶ 34. Barfield paid at least four individuals, referred to as "smurfs," with U.S. currency and methamphetamine to purchase pseudoephedrine. *Id.* at 19 ¶ 36. In light of this evidence, the leadership role was properly applied.

This claim must fail under *Strickland* because Barfield has failed to raise a genuine issue

12

of material fact on the issue of deficient performance. As noted, the evidence of record supports the leadership role enhancement under U.S.S.G. § 3B1.1(b); thus, any objection from Barfield's attorney would have been overruled. *See Moore v. United States*, 934 F.Supp. 724, 731 (E.D.Va. 1996) (holding that "[f]ailure to raise a meritless argument can never amount to ineffective assistance."). Because Barfield has made an insufficient showing on the performance prong of the *Strickland* standard, this court need not address the prejudice prong. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the [petitioner] makes an insufficient showing on one."). Accordingly, the Government is entitled to summary judgment on Barfield's third claim.

### 4. Barfield alleges that his attorney provided ineffective assistance of counsel by failing to object to this court's determination that the conspiracy started in December 2011.

Barfield alleges in his fourth and final claim that his attorney provided ineffective assistance by failing to object to this court's determination that the conspiracy started in December 2011. Pet'r's Mot. [DE-452] at 8; Pet'r's Am. Mot. [DE-476] at 8; Pet'r's Mem. [DE-476-1] at 5-6. According to Barfield, he did not have any contact with his codefendants until April 2012. Pet'r's Mot. [DE-452] at 8; Pet'r's Am. Mot. [DE-476] at 8; Pet'r's Mem. [DE-476-1] at 5-6. Barfield contends that if this court had started the conspiracy on the "right date," his criminal history points would have been less. Pet'r's Oppos. [DE-488] at 2-3. Barfield also contends that he made his attorney aware of this issue on many occasions. *Id.* at 3.

Barfield has presented no support for his bare allegations that this court erred in its determination of the start of the conspiracy. Because this unsupported allegations provide no support for his claim that this court erred, his attorney did not provide deficient performance by

13

failing to object. *See Moore*, 934 F.Supp. at 731 (holding that "[f]ailure to raise a meritless argument can never amount to ineffective assistance."). Likewise, Barfield has presented no support for his claim that if this court had properly determined the start of the conspiracy that he would have been in a different criminal history category. In sum, the Government is entitled to summary judgment because Barfield has failed to raise a genuine issue of material fact under the either prong of the *Strickland* standard. Consequently, the Government is entitled to summary judgment on Barfield's fourth claim.

## IV. Conclusion

For the foregoing reasons, the Government's Motion for Summary Judgment [DE-467] is ALLOWED and Barfield's Motions to Vacate [DE-452, -476] are DENIED.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2) (A certificate of appealability will not issue unless there has been "a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (Where a court has rejected the constitutional claims on their merits, a petitioner must demonstrate that reasonable jurists would find that the court's assessment of the constitutional claims is debatable or wrong, but when a court denies relief on procedural grounds, a petitioner must demonstrate that jurists of reason would find it debatable whether the court's procedural ruling was correct.).

SO ORDERED.

This the _7_ day of March, 2017.

James C. Fox
JAMES C. FOX
Senior United States District Judge

14